*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO DECEMBER 3, 2019

```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                *
                                *
UNITED STATES OF AMERICA        *
                                *  19-cr-151-01-SM
              v.                *  August 1, 2019
                                *  3:10 p.m.
                                *
JEFFREY HATCH                   *
                                *
* * * * * * * * * * * * * * * * *
```

<u>TRANSCRIPT OF WAIVER AND CHANGE OF PLEA HEARING</u>
<u>BEFORE THE HONORABLE JOSEPH N. LAPLANTE</u>


<u>Appearances</u>:


<u>For the Government</u>:        Jennifer C. Davis, AUSA
                            United States Attorney's Office




<u>For the Defendant</u>:         Charles J. Keefe, Esq.
                            Wilson Bush & Keefe PC




<u>Probation Officer</u>:        Janice Bernard




<u>Court Reporter</u>:           Liza W. Dubois, RMR, CRR
                            Official Court Reporter
                            United States District Court
                            55 Pleasant Street
                            Concord, New Hampshire 03301
                            (603)225-1442

1            (Chambers conference held from 2:55 p.m. until

2     3:05 p.m.)

3                        P R O C E E D I N G S

4            THE CLERK:  The court is in session and has

5     for consideration a waiver plea hearing in the matter of

6     United States vs. Jeffrey Hatch, case number

7     19-cr-151-01-SM.

8            Will the defendant please stand and raise your

9     right hand.

10           (Defendant sworn by the deputy clerk.)

11           THE CLERK:  Thank you.  Please spell -- say

12    your full name and spell your last name for the record.

13           THE DEFENDANT:  Jeffrey Paul Hatch, H-a-t-c-h.

14           THE CLERK:  Thank you.  Please be seated.

15           THE COURT:  All right.  Mr. Hatch is here for

16    the entry of a guilty plea to this communications count.

17    He's represented by his lawyer, Charles Keefe.  Jennifer

18    Davis, AUSA, is here for the prosecution today.

19           Mr. Hatch, I've got this document here.  It's

20    called a plea agreement.  It's 12 -- you can sit.  You

21    can be seated.

22           MR. KEEFE:  Thank you, your Honor.

23           THE COURT:  It's 12 pages long.  On the last

24    page, there's a signature line that says Jeffrey Hatch,

25    defendant, looks like it's been signed by you.  Did you

1  sign this?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Did you go over it carefully with

4  Mr. Keefe before you signed it?

5            THE DEFENDANT:  Yes, I did, your Honor.

6            THE COURT:  Let me ask you this.  What I mean

7  by that is did you go over every single line together

8  with Mr. Keefe?

9            THE DEFENDANT:  Yes.

10            THE COURT:  Mr. Keefe, why don't you tell me

11  what you did to go over this agreement with your client.

12            MR. KEEFE:  Thank you, your Honor.

13            THE COURT:  I had Mr. Hatch in my office with

14  me.  He had a copy of the plea agreement; I had a copy.

15  I read it out loud to him.  I explained various

16  provisions that might not be clear to someone who hasn't

17  been through this process before.

18            THE COURT:  Uh-huh.

19            MR. KEEFE:  I answered any questions he may

20  have had.

21            At the conclusion of that process, I believed

22  and still believe that he understands the entirety of

23  the agreement as he was engaged and asked pertinent

24  questions, was able to answer those.  And at the

25  conclusion of that, we both signed the plea agreement.

1              THE COURT:  Is that true?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Mr. Keefe, did you explain to your

4    client the nature of these charges, what they're about

5    and how they're proven in court?

6              MR. KEEFE:  I did, your Honor, yes.

7              THE COURT:  Is that true?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And, Mr. Keefe, did you explain

10   any defenses and challenges your client may have?

11             MR. KEEFE:  We did, both to this charge and

12   other potential charges.

13             THE COURT:  I see.

14             Is that true?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Are you satisfied with the work

17   Mr. Keefe's done on your behalf in this case and his

18   advice and counsel?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  All right.  Mr. Keefe, do you have

21   any questions at all about your client's competency to

22   enter a plea today?

23             MR. KEEFE:  I do not, your Honor.

24             THE COURT:  All right then, Mr. Hatch, we'll

25   proceed.

1              Tell me about yourself.  How old are you?

2              THE DEFENDANT:  I'm 39 years old.

3              THE COURT:  College-educated?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  So you read and write English

6    okay?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  All right.  Married?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  Children?

11             THE DEFENDANT:  No, sir.

12             THE COURT:  Do you have any addictions?

13             THE DEFENDANT:  I do.

14             THE COURT:  All right.  What drugs?

15             THE DEFENDANT:  Opiates is my -- my main --

16             THE COURT:  All right.

17             THE DEFENDANT:  -- substance.

18             THE COURT:  Are you under the influence of

19   opiates right now?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Any medical assistance like

22   Suboxone or anything like that?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  When's the last time you used any

25   kind of illegal drugs?

```
1              THE DEFENDANT:  September 18th of 2017.

2              THE COURT:  All right.  What about

3    prescriptions?  Are you on any prescriptions?

4              THE DEFENDANT:  No, sir.

5              THE COURT:  Are you supposed to be, that

6    you're not taking?

7              THE DEFENDANT:  No.  No, sir.

8              THE COURT:  All right.  Have you ever been

9    diagnosed -- other than with a substance abuse disorder,

10   have you ever been diagnosed with any kind of mental

11   illness or disorder?

12             THE DEFENDANT:  I was diagnosed with

13   depression at one point.

14             THE COURT:  Yup.  Did you treat with -- did

15   you treat with medication?

16             THE DEFENDANT:  I did.

17             THE COURT:  Are you on that medication now?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Are you supposed to be?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  All right.  What was it?

22             THE DEFENDANT:  It was Cymbalta.

23             THE COURT:  Yup.  All right.  So there's

24   nothing that you should be taking now that you're not

25   taking?
```

1          THE DEFENDANT:  No.

2          THE COURT:  Do you feel all right today?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Okay.  The offense with which

5   you're charged is called using a communication facility

6   to facilitate the distribution of controlled substances.

7   That has three elements of proof, three things the

8   prosecutor has to prove beyond a reasonable doubt for

9   you to be convicted.

10          The first is that at about the time of the

11   offense charged in this information, which is like an

12   accusation by the prosecutor -- an information is just

13   an accusation, not an indictment.  We'll go over that in

14   a minute.

15          At the time charged in the information, you

16   knowingly and intentionally used a communication

17   facility, in this case, the telephone.  So you used a

18   telephone.  That's number one.  Understand?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Number two, that in -- that you

21   did so committing, causing, or facilitating the

22   commission of a controlled substance felony, that is,

23   the unlawful distribution of fentanyl.

24          All that means is your phone call was part and

25   parcel to facilitating, to helping bring forward, the

1   commission of a drug offense, distribution of fentanyl.

2   Do you understand?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  And then, third, that that offense

5   was actually committed, that that offense took place.

6   Do you understand?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  And one thing I didn't mention, I

9   think I kind of glossed over this, when you used that

10  telephone, you did it knowingly and intentionally.  In

11  other words, it wasn't like you were having a

12  conversation and you were accidentally transmitted by a

13  device.  You were on the phone; you used a phone.

14  Understand?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  All right.  So it's actually four

17  things, because I kind of blended the first two, but

18  that's what the prosecutor has to prove.  Do you follow

19  me?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  Take a look at that

22  plea agreement, please.  Do you have it in front of you?

23          THE DEFENDANT:  (Nods head.)

24          MR. KEEFE:  We do, your Honor.

25          THE COURT:  Take a look at page 2.  Do you see

1    there, Mr. Hatch, where about halfway down the page it

2    says Section 3, Offense Conduct?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  All right.  The first line there,

5    I want you to read that out loud into the record,

6    please.

7              THE DEFENDANT:  The defendant stipulates and

8    agrees that if this case proceeded to trial, the

9    government would prove the following facts, which would

10   establish the elements of the offense beyond a

11   reasonable doubt.

12             THE COURT:  All right.  Obviously you read

13   perfectly.  I don't mean to be insulting.  I had to make

14   a record of that so we had a record that you actually

15   can read.

16             THE DEFENDANT:  Yes.

17             THE COURT:  So this section here, Offense

18   Conduct, this describes your conduct, the evidence in

19   the case, what you did.  Do you understand that?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  And this is part of the -- this is

22   part of that agreement that you read line by line with

23   Mr. Keefe, right?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Is there anything here that's

1  inaccurate, untrue?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  It's all true?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  All right.  Let's talk about the

6  penalties that you face.

7          First of all, this is a felony and as far as I

8  can tell, you don't have a felony record.

9          THE DEFENDANT:  No, sir.

10          THE COURT:  All right.  This is -- this is --

11  that means there's going to be a crime on your criminal

12  record permanently.  It can't be erased or expunged or

13  annulled.  We don't have a procedure like that in

14  federal law to clean up your record.  Do you understand

15  that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  Secondly, you could

18  lose some rights and entitlements and benefits based on

19  being a convicted felon.  You can lose the right to

20  vote, depending on where you live; you could lose your

21  right to serve on a jury, run for office or hold office,

22  or to possess a firearm.  That's very important to a lot

23  of people.  You can lose your rights like that based on

24  being a convicted felon.  Do you understand?

25          THE DEFENDANT:  Yes, sir.

1       THE COURT:  In addition to rights, you could

2   lose benefits and entitlements, things that are provided

3   by local government, state government, the federal

4   government: educational benefits, occupational benefits,

5   public assistance, eligibility for jobs, all kinds of

6   things, housing assistance, based on being a convicted

7   felon.  Do you understand?

8       THE DEFENDANT:  Yes, sir.

9       THE COURT:  And then third and most immediate

10  is the sentence that the Court will impose.  In this

11  case, there's a maximum prison term the Court can impose

12  of four years.  Do you understand?

13      THE DEFENDANT:  Yes, sir.

14      THE COURT:  The Court can impose a fine of

15  $250,000.  Do you understand?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  There'll be a $100 fee charged.

18  It's called a statutory assessment.  It's just a fee,

19  but it's part of the sentence and you have to pay it.

20  Do you understand?

21      THE DEFENDANT:  Yes, sir.

22      THE COURT:  AUSA Davis, is there any

23  forfeiture or restitution involved here?

24      MS. DAVIS:  There are not, your Honor, but may

25  I bring us back to paragraph 3 of the plea agreement for

1  one moment?

2          THE COURT:  Yeah.

3          MS. DAVIS:  I would just like to add two

4  things to the record that are not contained in that

5  paragraph, if I may.

6          THE COURT:  Hold up for a second.  We'll do

7  that as soon as we finish the penalties.

8          MS. DAVIS:  All right.

9          THE COURT:  I'll come back.  But I appreciate

10 your raising it.

11         All right.  So there's no forfeiture.  You

12 don't have to forfeit any property to the government.

13 You're not going to have to pay any victims.

14         And you're an American citizen?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  All right.  If you weren't or if

17 you're not, you can be deported.  Do you understand?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  That's not part of the sentence,

20 but if you're not a citizen, that can be a consequence.

21 Apparently you are, so it's not an issue, but as long as

22 you understand that.

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  All right.  There's one more

25 thing.  It's called supervised release.  Supervised

1    release is a status that you live under after your
2    release from federal prison.  All right?  There's a set
3    of written rules and conditions that are all written out
4    for you.  You have to obey them.  And you're supervised
5    by a U.S. probation officer, like the woman seated over
6    there to your left.  Her, or one of her colleagues, will
7    supervise you.  If you follow the rules and comply with
8    the conditions, eventually your supervision will end.
9         In this case, it has to be a term of at least
10   one year of supervision.  It could be more.  But if you
11   follow the rules, eventually it's over; you're off
12   supervision.  If you violate the rules, your supervised
13   release status can be revoked and you can be sent back
14   to prison.  In fact, you can be sent back to prison for
15   longer than you were sent the first time and you might
16   not receive any credit for good street time, which is
17   what we call the time that you complied with the rules.
18   Do you understand?
19             THE DEFENDANT:  Yes, sir.
20             THE COURT:  So those are the consequences of a
21   guilty plea, a felony conviction.  Do you understand?
22             THE DEFENDANT:  Yes, sir.
23             THE COURT:  Any questions?
24             THE DEFENDANT:  No, sir.
25             THE COURT:  AUSA Davis, what did I overlook?

1    I'm sorry.

2              MS. DAVIS:  Yes.  You didn't overlook

3    anything, your Honor.  I'd like to add two things to the

4    record as it pertains to paragraph 3 of the plea

5    agreement that are not contained in the written plea.

6              THE COURT:  Sure.

7              MS. DAVIS:  The first is that, as the Court

8    knows, the offense date for the information -- for Count

9    One of the information is July 25th of 2017.

10             THE COURT:  Yeah.

11             MS. DAVIS:  On September 18th, of 2017, the

12   defendant was stopped by the New Hampshire State Police

13   in New Hampshire and was found to be in possession of a

14   personal-use quantity of fentanyl.

15             Secondly, since his arrest on September 18th

16   of 2017, the United States is not in possession of any

17   information which would indicate the defendant had any

18   more involvement in drug trafficking.

19             THE COURT:  All right.

20             MS. DAVIS:  Thank you.

21             THE COURT:  But I assume you wanted to make a

22   record of that for some reason.  I don't have any

23   problem with that at all.

24             MS. DAVIS:  Thank you.

25             THE COURT:  Mr. Keefe, anything you want to

1    add or subtract to that?

2              MR. KEEFE:  The only thing I'd add is the

3    information is not only accurate, but Mr. Hatch has been

4    sober since that date as well.

5              THE COURT:  All right.  Thank you.

6              Now, let me tell you how federal sentencing

7    works.  The Court, when it sentences you, is going to be

8    advised by these guidelines.  They're called the U.S.

9    Sentencing Guidelines.  I'll be advised by them.  I'm

10   not bound by them.  I don't have to impose the sentence

11   that they recommend, but they recommend a sentence in

12   every case primarily on two factors.  The first factor

13   is how serious the crime is.  That's generally -- not

14   all the time, but generally -- in a drug case determined

15   by the drug quantity.  But sometimes it's not.  Bottom

16   line is there'll be a number assigned to it called the

17   offense level and that's between 1 and 43.  The other

18   factor is your record.  However -- how serious your

19   record is is the other factor that the guidelines

20   consider.

21             Based on those two factors, primarily, and

22   some other factors that are sort of on the margins, it

23   makes a recommendation, a range of months.  I don't have

24   to impose that sentence, but I have to -- I have to

25   determine what it is every time.

1          Now, one of the ways I'll determine that,

2    other than doing the research myself, will be the

3    Presentence Report.  A report will be written about you

4    and your crime after U.S. Probation does an

5    investigation of those things.  That's a report --

6    you'll get a copy of it, the prosecutor will, too, and

7    you can object to anything in that report you don't

8    agree with.  Mr. Keefe will read it carefully with you

9    and to the extent there's things you disagree with, you

10   can object.  It'll contain things like factual findings,

11   legal conclusions, recommendations and guideline

12   calculations, and anything in there you don't agree

13   with, you can object to.  Understand?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  So can the prosecutor.  But

16   disagreeing with that report or with my interpretation

17   of it doesn't allow you to withdraw your guilty plea.

18   You can't take it back because you don't agree.  Do you

19   understand?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  All right.  So let's

22   talk about your plea agreement.

23          I've read this carefully.  It's an agreement.

24   Like any other contract, you've exchanged promises.

25   You've promised to plead guilty, which you're doing.

1   You've also promised to waive indictment, waive your

2   right to have this case presented to a grand jury, which

3   I'll cover with you in a few minutes.  You've given that

4   up.  You've agreed that the factual statement here is

5   true, Section 3 that you read a little bit of, it's true

6   and could be proven in court.

7           The government's agreed that you should get

8   some credit for accepting responsibility, for admitting

9   what you did, under those guidelines.  That might shave

10  two points, maybe three points, off your guideline

11  offense level, depending on how the case works out.  And

12  you're entitled to that, according to the prosecution,

13  as long as you don't violate this plea agreement by

14  breaching it in some way.  Do you understand?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  There's also an agreement about

17  the sentence.  The government agrees that its sentence

18  will be at the low end of the guideline sentencing

19  range.  What that means is once we figure out what the

20  guidelines recommend, right -- that'll be a range of

21  months.  I'll just make one up right now.  I have no

22  idea what it's going to be.  None.  Suppose it was 18 to

23  24 months.  The government's agreement is it's going to

24  recommend 18, no higher.  It's going to take the low

25  number and recommend that.  Do you understand?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Remember, though, I don't have

3    to -- I don't have to accept that.  You have to keep

4    that in mind.  Do you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Okay.  So getting back to the

7    agreement -- only one other thing.  I'm sorry.

8          Are you good?

9          MR. KEEFE:  Thank you, your Honor.  Yes.

10         THE COURT:  Only one other thing.  Normally in

11   court you have a right to challenge the prosecution, the

12   investigation, the prosecution, the court proceedings in

13   court -- bless you -- by what's called a petition or a

14   motion in this court, which is called a collateral

15   attack, or an appeal to a higher court, which is called

16   an appeal.  In this agreement, you've given up your

17   right to the collateral attack or appeal.  You can't

18   challenge this case after it's over.  Do you understand?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Now, you do retain a few rights, a

21   few abilities to challenge an appeal, but they're very

22   few and they're very narrow.  First is the sentence.  If

23   the sentence is higher than that guideline sentencing

24   range, then you can appeal the sentence, challenge it or

25   appeal.  Do you understand?

1      THE DEFENDANT:  Yes, sir.

2      THE COURT:  Second, if Mr. Keefe's performance

3  was ineffective, if he didn't perform at the level

4  required by our Constitution -- bless you --

5      MS. DAVIS:  Thank you, Judge.

6      THE COURT:  -- you get to challenge your

7  appeal, potentially.  All right?  The Constitution

8  requires him to perform at a certain level and if he

9  doesn't reach that level, it may give you a challenge or

10  appeal.  Do you understand?

11      THE DEFENDANT:  Yes, sir.

12      THE COURT:  Third -- the third is if the law

13  changes.  If the law of communication device changes or

14  drug trafficking or something changed in a way that

15  affected the validity of your plea here today, that

16  could give you grounds to challenge or appeal.  Do you

17  understand that?

18      THE DEFENDANT:  Yes.

19      THE COURT:  All right.  That's it.  Those are

20  very narrow, very thin.  It's in your plea agreement.

21  By and large, you're giving up your right to appeal.  Do

22  you understand?

23      THE DEFENDANT:  Yes, sir.

24      THE COURT:  So, Mr. Keefe, these collateral

25  attack and appeal waivers in the agreement, have you

1  gone over those with your client in detail?

2          MR. KEEFE:  I have, your Honor.

3          THE COURT:  Did he demonstrate to you that he

4  understood those waivers?

5          MR. KEEFE:  He did, your Honor, and I

6  explained them very much in a similar way the Court just

7  did in addition to reading the plea agreement with my

8  client.

9          THE COURT:  Thank you.  All right.  That's the

10  gist of it.  Anything I left out that you want me to

11  cover in the plea agreement?

12          MS. DAVIS:  No, your Honor.  No.

13          MR. KEEFE:  Nothing further, your Honor.

14  Thank you.

15          THE COURT:  One thing I should have said to

16  you at the outset of this, just something I should have

17  reminded you of, first of all, was just that everything

18  we say is being recorded and typed and you have to

19  answer out loud so we can get it all down.  And you're

20  obviously doing that.

21          Secondly, if I ask you something that you

22  don't understand, don't answer it.

23          THE DEFENDANT:  Okay.

24          THE COURT:  Ask me to explain it or ask

25  Mr. Keefe to explain it because we can take all the time

1  you want.  You can speak to him outside of our hearing

2  by pressing those microphone buttons and anytime you

3  want to take a break outside the courtroom to speak with

4  Mr. Keefe, you can do that.  Do you understand?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And, finally -- this is important.

7  You've got to tell the truth.  The Court's entitled to

8  truthful answers to all these questions and if you give

9  an answer that's untrue -- this is the real reason I'm

10  revisiting this.  It's not that I suspect that you're

11  lying.  It's just that I don't want you to not know

12  this.  If you said anything that was untrue, it could be

13  used against you, it could hurt you, in this case or in

14  a whole new criminal case.  All right?

15          THE DEFENDANT:  (Nods head.)

16          THE COURT:  There's a roomful of prosecutors

17  here and they'll charge you with lying if you lie.  That

18  could hurt you, so you don't want to lie.  Do you

19  understand?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Okay.  Just making sure we had

22  that on the record.

23          Now, the Constitution.  When you plead guilty

24  in court, you're giving up certain rights guaranteed to

25  you by the United States Constitution.  Okay?  First of

1    all, you have a right -- you can't even be brought to

2    court on a charge like this unless it's been presented

3    to a grand jury usually.  A grand jury has to look at

4    the evidence and determine if there's probable cause --

5    there's usually up to 21 people there -- there's

6    probable cause to believe a federal crime was committed

7    and that you committed it.  That's called an indictment,

8    that if a majority of them find that probable cause

9    about you.  Do you understand?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Now, the grand jury doesn't have

12   to return an indictment.  They can say no.  If they say

13   no, you can't be brought to court on a charge like this.

14   Do you understand?

15            THE DEFENDANT:  Yes, sir.

16            THE COURT:  All right.  And you're giving up

17   the right to test that, basically; you're giving up the

18   right to see if the grand jury would refuse to indict

19   you.  Do you understand?

20            THE DEFENDANT:  Yes, sir.

21            THE COURT:  Now, when you waive indictment --

22   when you say, I don't -- I don't need that, I'll proceed

23   on an information, which is just an accusation by

24   Ms. Davis here and her bosses that you committed the

25   crime, if you change your mind now and you don't plead

1  guilty, you're still going to face the charge because

2  you will have given up your right to indictment.  Do you

3  understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  All right.  So I have a Waiver of

6  Indictment form here.  It looks like you signed a Waiver

7  of Indictment.  Is that your signature?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  On top of Mr. Keefe's right there,

10  yeah?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Okay.  What this tells me is that

13  you understand that right, the right to have your case

14  presented to a grand jury before you face the charges

15  and an indictment to issue, and you're giving up that

16  right and you understand it and you're doing it

17  knowingly and voluntarily.  Do you understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  All right.  Mr. Keefe, do you have

20  any reason to believe that your client's waiver of his

21  right to indictment is not knowing, voluntary, and

22  intelligent?

23          MR. KEEFE:  I do not.

24          THE COURT:  Do you know of any reason why he

25  shouldn't waive indictment?

1          MR. KEEFE:  I do not.

2          THE COURT:  So I'm going to sign this waiver

3   form.  The Court finds that the defendant has knowingly,

4   voluntarily, and intelligently waived his right to have

5   the case presented to a grand jury before facing these

6   charges.  And I'm handing that waiver to the deputy

7   clerk.

8          All right.  Now, getting back to the

9   Constitution.  You also have the right to plead not

10  guilty.  Even though we've been through all this, even

11  though you already told me that what the agreement says

12  is true and that you actually did it, you don't have to

13  admit it today if you don't want to.  Do you understand

14  that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  All right.  You have a right to a

17  jury trial.  Do you understand that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  At a jury trial, you have the

20  right to the assistance of counsel, Mr. Keefe here or

21  someone like him, to defend you or assist you in

22  defending yourself.  Understand?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  You have the right to see and hear

25  all the evidence and witnesses presented against you and

1    to cross-examine and confront them in your defense.  Do

2    you understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  You have subpoena power, which is

5    a right called compulsory process.  It means you can

6    subpoena to court evidence and witnesses to present your

7    own defense.  And that's your right.  Do you understand?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  You have the right to make up your

10   own mind if you want to testify or not.  You don't have

11   to take the witness stand or answer any questions or

12   explain yourself in any way.  Nobody can make you do

13   that.

14              Likewise, if you want to do it, if you want to

15   take the witness stand and explain yourself and answer

16   questions, nobody can stop you.  The decision about

17   whether or not to take the witness stand is yours and

18   yours alone, Mr. Hatch, because it's your constitutional

19   right.  Do you understand that?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  If you go to trial, you don't have

22   to prove you're innocent.  The prosecutor has to prove

23   your guilt beyond a reasonable doubt.  And what that

24   means is those four elements that we talked about, all

25   right, that you used a phone, that you did it knowingly

1  and intentionally, that you did it to commit a crime, to

2  facilitate the commission of a crime, and that the crime

3  was actually committed, that would all have to be proven

4  beyond a reasonable doubt in order for you to be

5  convicted of this crime.  Do you understand?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  You have a right to a unanimous

8  jury.  That means all 12 jurors would have to agree that

9  your case had been proven, each element, beyond a

10 reasonable doubt.  Do you understand?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Normally you have the right to

13 appeal.  We already talked about that.  You waived

14 appeal and you waived collateral attack in your

15 agreement, but, really, as far as appeal goes, you would

16 have appealed it -- you would have waived your right

17 anyway to appeal just by pleading guilty.  Because when

18 you go to trial, if you're found guilty, you get an

19 automatic appeal just for asking.  You get to go to a

20 higher court and the higher court would review the case.

21 Do you understand?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  What that means is the higher

24 court would review the record to make sure that there

25 was sufficient evidence to convict you, that the

1 criminal law was applied correctly in your case, that

2 you got a fair trial, and that none of your rights were

3 violated at trial.  Do you understand?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  But when you enter a guilty plea,

6 you give up all that.  You don't have an appeal.  You've

7 given it up and waived it.  Do you follow me?

8          THE DEFENDANT:  Uh-huh.

9          THE COURT:  Is that a yes?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  Now, you do retain

12 those rights I talked about before.  You could have an

13 appeal or a challenge based on ineffective assistance of

14 counsel by Mr. Keefe, by a change in the law that was

15 retroactively applied, or the sentence, if it's higher

16 than the guideline range.  Do you understand?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  So thinking about all these rights

19 that we're talking about that are connected to a trial,

20 if you enter a guilty plea and I accept it, they'll be

21 gone.  They'll be given up and waived.  Do you

22 understand that?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  So is it still your wish to do

25 that?  Is it still your wish to give up your rights and

1    enter a plea instead of going to trial?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  It is?  All right.  Tell me why.

4    I mean, you -- you have a right to a trial.  Why not go

5    to trial?

6         (Discussion between counsel and the defendant.)

7              MR. KEEFE:  Thank you, your Honor.

8              THE COURT:  Why not go to trial?

9              THE DEFENDANT:  Your Honor, I -- I had signed

10   a cooperation agreement with New Hampshire State Police

11   and, therefore, provided them with all the evidence I

12   was then used to be charged with federally, so I would

13   have no chance of being found not guilty because they

14   had all the evidence --

15             THE COURT:  Well --

16             THE DEFENDANT:  -- willingly given to them by

17   me and I would probably --

18             THE COURT:  Wasn't there any kind of agreement

19   not to use it?

20             THE DEFENDANT:  I had an agreement with

21   New Hampshire State Police and then DEA came in and I

22   gave the information with the understanding that it was

23   under that agreement, but it was not.  So that --

24             THE COURT:  Yeah.

25             THE DEFENDANT:  -- was what was used to charge

1   me.  So they know everything and I would be charged with

2   a larger crime than this if we went to trial.

3              THE COURT:  I see.  All right.  Are you

4   telling me you're not really guilty of this?

5              THE DEFENDANT:  No, sir, I am guilty.

6              THE COURT:  All right.  Okay.  Well, I

7   understand.  Your --

8              Ms. Davis --

9              MS. DAVIS:  Yes, sir.

10             THE COURT:  -- were there any other plea

11   offers made besides the one in this agreement?

12             MS. DAVIS:  No, Judge.

13             THE COURT:  Is that true?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Mr. Keefe, is that true?

16             THE DEFENDANT:  That is true, your Honor.

17             THE COURT:  All right.  No victim notification

18   in a case likes this.

19             MS. DAVIS:  No, your Honor.

20             THE COURT:  All right.  Has anyone tried to

21   force you, intimidate you, or coerce you in any way to

22   enter this plea?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Have there been any promises made

25   to you outside of what's in this written plea agreement

1    to get you to plead?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  All right.  And I looked at a

4    letter from the prosecutor to the defense dated July

5    26th.  I've read that.  That doesn't contain a promise,

6    as far as I can tell.

7              THE DEFENDANT:  Agreed.

8              THE COURT:  Do you agree?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  All right.  That just describes

11   some events that may or may not happen in the future.

12   Understood?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Did you want to say something?

15             MS. DAVIS:  No, just agree with you.  Thank

16   you.

17             THE COURT:  All right.  All right.  Well, then

18   the only thing left here is sentencing.  Understand,

19   that might include federal prison.  Do you understand

20   that?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  All right.  Have you had enough

23   time to think about this before you go through with it?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Mr. Keefe, have you had any

1    conversations with your client or have you observed

2    anything about him involving medication, drugs, alcohol,

3    mental illness or disorder, anything at all that might

4    be affecting his actions, his judgment, his memory, or

5    his ability to understand these proceedings today?

6              MR. KEEFE:  I have not, your Honor.

7              THE COURT:  All right.  I'll take your plea

8    then.

9              Anything else anybody wants me to cover?

10             MR. KEEFE:  No, thank you, your Honor.

11             MS. DAVIS:  No, thank you, your Honor.

12             THE COURT:  All right.  To this information

13   issued by the U.S. Attorney charging you with use of a

14   communication facility to facilitate unlawful

15   distribution of fentanyl in violation of federal law

16   on or about July 25th, 2017, in the district of

17   New Hampshire, how do you plead, guilty or not guilty?

18             THE DEFENDANT:  Guilty.

19             THE COURT:  All right.  I accept your plea.  I

20   adjudge you guilty of the offense.  The plea agreement

21   contains some specific sentencing recommendations, but I

22   won't know if I can accept those -- actually, that'll be

23   up to, I think, Judge McAuliffe to accept, right?

24             THE CLERK:  Uh-huh.

25             THE COURT:  All right.  I'll offer to take

1    this from him, but if he wants it himself, it'll look

2    like November 6th, 2019.  And in the meantime, I'll make

3    the following findings so that he can sentence you with

4    confidence about the validity of your guilty plea.

5            I have questioned both Mr. Hatch and Mr. Keefe

6    regarding this plea.  Both have advised me that they

7    have conferred concerning the guilty plea, all aspects

8    of the charges against Mr. Hatch, and any defenses that

9    he may have.

10           I've observed Mr. Hatch answering the

11   questions, his answers, his demeanor, his manner, his

12   obvious intelligence, and his attitude.  He does not

13   appear to be under the influence of any medication, drug

14   or alcohol, any other substance, or any mental illness

15   or disorder which might be affecting his actions,

16   judgment, memory, or ability to understand these

17   proceedings.

18           I find that this guilty plea has a basis in

19   fact based on Section 3 of the plea agreement and the

20   defendant's acceptance thereof and agreement thereto.

21           I find that the free -- the plea is free of

22   any coercive influence of any kind and that no promises

23   have been made of any kind to the defendant in order to

24   induce his plea.  The Court specifically notes it

25   reviewed the July 26th, 2019, letter and it contains no

1   such promises.

2          I find that the defendant has entered the plea

3   competently and intelligently and voluntarily, based on

4   a full knowledge of the charges against him and the

5   consequences of his plea.

6          Again, sentencing is November 6th, 2019,

7   probably before Judge McAuliffe.

8          The defendant does not appear to be detained.

9          MS. DAVIS:  That's correct.

10          THE COURT:  What the status there?  What do

11   you want to do?

12          MS. DAVIS:  May we approach?

13          THE COURT:  Yeah.

14      (Sealed portion filed under separate cover.)

15          MR. KEEFE:  Could I have a moment with my

16   client, your Honor, on that?

17          THE COURT:  Sure.

18      (Discussion between counsel and the defendant.)

19          MR. KEEFE:  Thank you, your Honor.

20          THE COURT:  All right.  All right then.  The

21   Court orders the defendant released on a number of

22   conditions.  The conditions that have been recommended

23   by Officer Bernard, I've reviewed them.  Have you and

24   your client reviewed them, Mr. Keefe?

25          MR. KEEFE:  We have, your Honor.

1          THE COURT:  All right.  So I won't go over

2   them in court, but the deputy clerk will go over those

3   with you before you sign them and those -- those

4   conditions are the conditions of release pending

5   sentencing.

6          Anything else for the Court?

7          MS. DAVIS:  Not today, your Honor.  Thank you.

8          MR. KEEFE:  Nothing further.  Thank you, your

9   Honor.

10          THE COURT:  All right then.  We are adjourned.

11          (Proceedings concluded at 3:42 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.


Submitted: 9/4/19

*Liza W. Dubois*

Liza Dubois, RMR, CRR
Licensed Court Reporter No. 104
State of New Hampshire